IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND DIVISION, SOUTHERN DIVISION

| | |
|---|---|
| HICHAM ELKHARROUBI Et al.<br><br>Plaintiffs,<br><br>SIX FLAGS AMERICA LP et al.<br><br>Defendants, | Civil Action No.: 8:17-cv-02169- TDC<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER AND TO FILE THIRD AMENDED COMPLAINT; DECLARATION OF JONATHAN C. CAPP; PROPOSED THIRD AMENDED COMPLAINT |

IN MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER AND TO FILE THIRD AMENDED COMPLAINT

I

INTRODUCTION

This is a case where Plaintiff Hicham Elkharroubi ('Hicham') was injured in

'fractions of a second' when being dispatched from the trap door or drop gate on the Bonzai Pipelines ride ('the ride') operated by Defendant Six Flags America LP ( 'Six Flags') at their aquatic park in Bowie, Maryland. The ride was manufactured and supplied by defendant Splashtacular Inc. ( 'Splashtacular') whose successor in interest appears to be defendant AZS Industries LLC ('AZS').

Plaintiff Hicham initially believed that he struck the trap door because he was incorrectly positioned thereupon. Discovery and especially the conclusions of Plaintiffs' biomechanics expert, who conducted a site inspection on July 18, 2018 have now led Plaintiff to believe that he was injured due to the trap door malfunctioning due to a lack of maintenance. It is clear from discovery that Six Flags failed to properly maintain the trap door's mechanical mechanism. Furthermore, it appears that the manufacturer Splashtacular failed in its duty to provide proper instructions as to maintenance when it sold the product to Six Flags in 2012.  Thus it supplied a defective product and was negligent too.

Even though we believe that these matters are already adequately covered and included and thus plead in the context of a personal injury case, out of an abundance of caution and to avoid an allegation to the contrary closer to trial, we hereby move to amend the complaint.

We have attached a version of the proposed Third Amended Complaint (TAC) to this motion as well as provided a red lined version of the TAC as Exhibit A to the declaration of Jonathan Capp.

Pursuant to LR. 103.6 (d) Plaintiffs have provided a copy of the proposed TAC to opposing counsel but have not received their consent to this being filed and do not envision receiving such consent.

## II
## THE FACTS AND CURRENT PROCEDURAL STANCE

**A. THE FACTS OF THE UNDERLYING MATTER**

Plaintiff HICHAM ELKHARROUBI (Hicham) is a citizen and resident of the country of Morocco where he lives with his co-plaintiff spouse Lamya. He is currently 41 years old. Declaration of Hicham Elkharroubi Ct. Dkt 20-1( Hicham. dec. ¶ 2) In the summer of 2015 plaintiffs traveled to the United States on vacation for around 18 days. X Flags ( Id. ¶ 3) On August 12, 2015 they visited the Hurricane Harbor amusement park operated by defendant Six Flags America LP in Maryland. At the park he rode the Bonzai Pipelines waterslide attraction and which had been manufactured and sold to Defendant Six Flags by the predecessor in interest of Defendant AZS, one Splashtacular, Inc. The Bonzai pipelines attraction is a ride whereupon the riders are placed on a trap door or drop-door in a launch capsule. Once the trap door/drop door is opened the rider is hurled down a slide with a six-story drop and then follows multiple rapid turns before dropping down to the splash pool.) Hicham ascended the steps to the part of the attraction where riders enter individual capsules, stand on a trap door before being released, and then fall thru a tube into a type of landing pool. This was the first and only time he rode this attraction. When he entered the capsule there was only one member of staff present in the vicinity of the capsules. Nobody instructed him at all as to how to enter and position himself in the capsule. He does not remember seeing any visual or written instructions as to how he should position myself in the capsule. ( Hicham.dec ¶¶6-7)

To the best of his recollection he positioned himself in the capsule by placing his back against the back of the capsule and with his feet together more towards the middle of the trap door. All of a sudden the trap door was activated and opened. As he fell he hit his left knee against a hard surface. ( Id. ¶¶ 7-8) The first aid team arrived and his right knee and leg was bandaged and he was supplied with a wheel chair and crutches to enable him to walk. Prior to this incident he was perfectly healthy and had no problems with his knees and legs.   On August 15, 2015 he attended the Emergency Department at the New York Presbyterian Hospital in Manhattan. He was examined and x-rayed by the attending doctors and was diagnosed with a left tibial fracture, prescribed painkillers,

and advised to undergo surgery. ( Id. ¶¶ 10-11) On August 17, 2015[1] Plaintiffs flew back to Morocco and Hicham was operated on in Morocco on August 19, 2015. Metal plates were installed during the surgery. The metal plates installed in his leg and knee are still in there and he is still suffering as a result of the accident at the Hurricane Harbor waterpark. ( Id. ¶ 12) He initially believed that he struck the trap door since he was wrongly positioned. Having had the benefit of the opinion of his bio-mechanical and mechanical expert, Dr. Andres Calderon, which he received in early October 2018, Plaintiff now contends that the trap door struck him since it malfunctioned due to a lack of maintenance. Declaration of Jonathan Capp dated October 31, 2018 ( Capp.dec.[2] ¶ 15)

The incident happened in fractions of a second when Plaintiff was in a state of shock. He is also not an expert in biomechanics or engineering. (id. ¶ 17 and ex. E thereto).

**B. THE PROCEDURAL STANCE**

     Plaintiffs filed their initial complaint in this matter ( Ct. Dkt. 1) (Complaint) on August 1, 2017. As a result of the letter motion filed by counsel on 8/17/17 for AZS ( Doc. 6)  and the subsequent order of 9/25/17 (Doc. 14)  based on an agreement entered into the parties, the original compliant was amended and thus the First Amended complaint and  SAC spelt out in detail the failure to warn as it related to signage, and as to how the rider should be told where to position himself.

  The second amended complaint (SAC) essentially added Splashtacular as a defendant once Plaintiff became aware of their identity. The (SAC) ( Doc. 26) contains counts for product labiality and negligence against the manufacturers AZS Industries LLC and Splastacular LLC and also a count for negligence against Six Flags. The product liability allegations allege, inter alia, that the manufacturer did not provide adequate warnings, to include warning mechanisms, to the rider ( i.e. Hicham) and the operator of the ride not to operate the ride when it was unsafe to do so and a further warning that any unsafe

---

[1] The declaration contains a typo- namely 2017. He returned to Morocco and was operated on there  in August 2015.

positioning in the ride when it was not safe could result in serious injury. (See SAC ¶¶ 29-35) The SAC also alleges that ' Plaintiff Hicham trusted Defendants and their respective employees and agents to follow all safety precautions.' (id.¶ 22),

The allegations of negligence against Six Flags and contained in Count 1 of the SAC are far broader than a mere failure to incorporate warning mechanisms or signage in the ride. See SAC ¶¶ 46-48. Six Flags was under an obligation to follow all safety procedure and not those just relating to warnings and signage. (id. ¶22)

The SAC alleges that not only the ride attendants failed but also other employees, and obviously inferring maintenance and safety employees. (id. ¶ 48) The SAC alleges that Six Flags failed to ensure that its employees and ride attendants failed to adhere to safe and proper practices, and inter alia, failed to correct, remedy, repair and/or eliminate a dangerous condition upon the ride. (Id. ¶ 48 (e) - (g) ); and that Six Flags failed to follow its own rules and standards for the safe operation of the ride. (id. ¶ 48 (n))
The SAC also alleges a count of negligence against Splashtacular and AZS for supplying a product '..which contained no or any adequate warning as to use,..' (id. ¶ 57)

Plaintiffs also plead the maxim of '*res ipsa loquitur*' (id. ¶36) i.e. that the facts speak for themselves that there has been negligence in absence of knowing the precise cause at the time.

On June 14, 2018 Plaintiff Hicham Elkharroubi propounded his first set of interrogatories and his first set of requests for production of documents to Defendant Six-Flags.  On July 16, 2018 Six-Flags emailed their discovery responses to Plaintiffs.  Six-Flags refused to provide any documents relating to the maintenance of the ride and a discovery dispute ensued culminating in Plaintiffs filing a motion for discovery sanctions. (Doc.36)
When Six-Flags was eventually deposed on October 3, 2018 thru a FRCP 30 (6) (b) deposition Six-Flags effectively admitted that they had no maintenance documents relating to the time at and before the accident (August 2015) and that in any event wholly inadequate maintenance was performed. (Capp.dec. [2].¶¶6-7 and Ex. B thereto)
Plaintiff's liability expert has opined thru his expert report dated October 9. 2018, that the

accident occurred due to wholly inadequate maintenance performed by Six Flags and also the failure of Splashtacular to provide adequate instructions as to maintenance. (Id. ¶15) When Splashtacular was deposed in Kansas City on October 16, 2018 their reckless abandon toward the issue of maintenance if the ride became all the more apparent. (Id. ¶8 and Ex. D thereto) This is compounded by the unethical and obstructive tactics of their counsel James Liskow ( see brief letter of Jonathan Capp dated October 29, 2018 ( Doc. 42)

In any event, Plaintiffs have diligently pursued discovery despite the intransigence and obstructive tactics of defendants and now wish to make it all the clearer that improper maintenance, and the failure to provide proper instructions by the manufacturer, caused the accident.

Of note is that Plaintiffs received maintenance documents from Six -Flags, albeit vacuous, as recently as October 29, 2018. (id. ¶ 7)

Prior to conducting the discovery they have been able to complete so far, Plaintiff would not have been able to particularize these claims as they are now able to. Meeting the original deadline of July 20, 2018 was thus impossible. (id. ¶ 18)

### III
### LEGAL AUTHORITIES AND ARGUMENT

**A. Relating to modifying the scheduling order**

"A *schedule* may be modified upon *good cause* and with the judge's consent." [FRCP 16(b)(4)

A formal motion is not even necessary. The court may modify the schedule after consultation with the attorneys and any unrepresented parties, provided "good cause" is shown. [Adv. Comm. Notes to 1983 Amendment to FRCP 16(b)]

To establish "good cause," parties seeking modification of a scheduling order must generally show that, even with the exercise of *due diligence,* they cannot meet the order's

timetable. [*Johnson v. Mammoth Recreations, Inc.* (9th Cir. 1992) 975 F2d 604, 609; *Minter v. Prime Equip. Co.* (10th Cir. 2006) 451 F3d 1196, 1205, fn. 4; *Optivus Tech., Inc. v. Ion Beam Applications S.A.* (Fed. Cir. 2006) 469 F3d 978, 993]

Most courts hold delay alone is *not* enough to support denial of a motion for leave to amend. Rather, there must be a showing of "*prejudice* to the opposing party, *bad faith* by the moving party, or *futility* of amendment." [*Bowles v. Reade* (9th Cir. 1999) 198 F3d 752, 758 (emphasis added); see also *Mayeaux v. Louisiana Health Service & Indem. Co.* (5th Cir. 2004) 376 F3d 420, 427; *Johnson v. Cypress Hill* (7th Cir. 2011) 641 F3d 867, 872—"the longer the delay, the greater the presumption against granting leave to amend" (internal quotes omitted)]

**B. Relating to the liberal policy of amending pleadings**

Federal policy strongly favors determination of cases on their merits. Therefore, the role of pleadings is limited, and leave to amend the pleadings is freely given unless the opposing party makes a showing of undue prejudice, or bad faith or dilatory motive on the part of the moving party. [*Foman v. Davis* (1962) 371 US 178, 182, 83 S.Ct. 227, 230;

The circumstances under which Rule 15(a) "permits denial of leave to amend are limited." [*Ynclan v. Department of Air Force* (5th Cir. 1991) 943 F2d 1388, 1391]. Policy favoring leave to amend "a necessary companion to notice pleading and discovery"]

This policy is to be applied with "extreme liberality."

"Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" [*Sonoma County Ass'n of Retired Employees v. Sonoma County*, supra, 708 F3d 1109 at 1117 (brackets in original) (quoting *Foman*));

The party seeking leave to amend need only establish the reason why amendment is

7

required ("justice" so requires). The burden is then on the party *opposing* the motion to convince the court that "justice" requires *denial*—i.e., because of undue delay, bad faith, prejudice, etc.. [*Shipner v. Eastern Air Lines, Inc.*(11th Cir. 1989) 868 F2d 401, 406-407; see *Clarke v. Upton* (ED CA 2010) 703 F.Supp.2d 1037, 1041; *Alzheimer's Institute of America v. Elan Corp. PLC* (ND CA 2011) 274 FRD 272, 276]

Unless the applicable statute of limitations provides an even more liberal standard, amended pleadings "relate back" as to *existing* parties if the claim or defense asserted in the amended pleading arises "out of the *conduct, transaction or occurrence* set out—or attempted to be set out—in the original pleading." [FRCP 15(c)(1)(B) (emphasis added)] The amended complaint must be based on the same *operative facts* as those set forth or attempted to be set forth in the original complaint. Here this is the case, namely an injury caused by an unsafe ride, and particularly the operation of the trap door

### C. The rules as to amendment in a personal injury case such as this, where a Plaintiff could not pinpoint the cause of injury before discovery are extremely liberal and require that this motion be granted

As stated by the Supreme court stated in *Mayle v. Felix* (2005) 545 US 644, 656, 125 S.Ct. 2562, 2570; 'The federal rule makers recognized that personal injury plaintiffs often cannot pinpoint the precise cause of an injury prior to discovery'….. "…[t]hey therefore included in the Appendix to the Federal Rules an illustrative form indicating that a personal injury plaintiff could adequately state a claim for relief simply by alleging that the defendant negligently operated a certain instrumentality at a particular time and place.' <u>Mayle 660,</u>  and citing <u>Tiller v. Atlantic Coast Line R. Co.,</u> 323 U.S. 574, 580–581, 65 S.Ct. 421, 89 L.Ed. 465 (1945) where single occurrence was death caused by railroad's failure to provide its employee with a reasonably safe place to work.

### D.  Plaintiffs request that they be permitted to amend their complaint

As can be seen from the redlined proposed fourth amended complaint ( Capp.dec [2]. Ex.A ) in large part Plaintiffs merely seek to clarify and amplify what they have already clearly alleged and especially with regard to the negligence counts and also with regard to

their '*res ipsa loquitur*' allegation.

Furthermore, this personal injury matter is precisely the type of fact scenario envisioned by the Supreme Court in <u>Mayle</u> and <u>Tiller</u> where an injured Plaintiff requires discovery to fully ascertain the cause of his injury in a generally plead personal injury case. In this case Plaintiff Hicham required the services of an expert witness who did not even, and was not able to conduct a site inspection until 2 days before the July 20, 2018 deadline for any amendment of the pleadings (Capp.dec.[2] ¶ 18) . Injured in fractions of a second he initially reasonably believed that he was struck by the drop gate due him being dispatched in the incorrect position. Plaintiff is not a biomechanics expert. (id. ¶ 17 and deposition testimony found at Ex. E thereto)

Established principles demand that he permitted to amend his complaint in the circumstances. The highlighted deposition testimony of Six Flags and Splashtacular, found at Exhibits B and D to the Capp.dec [2] reinforce both the underlying merits of Plaintiff's claim and the fact that Plaintiff has not delayed in conducting discovery. Simply put Plaintiffs have acted in good faith and have not delayed in moving to file the Third Amended Complaint. In the face of notable obstruction and bad faith tactics they have diligently conducted discovery and determined that the proposed amendments are justified. In fact the conduct of defendants illustrates just how much they knew full well that the lack of maintenance caused the accident. This explains the lengths that have gone to contest discovery on this issue thus far.

Any unreasonable delay has been entirely occasioned by Defendants failing to produce documents and refusing to provide witnesses as is described in the declarations of Jonathan Capp. Defendant Splashtacular still refuses to produce witnesses relating to maintenance for deposition and persists in proposing deposition dates beyond the discovery cut off.

Defendants will suffer no undue prejudice if this amendment is permitted. Discovery will not have to be reopened and any trial date will not have to be extended.

Granting this motion would be in full compliance with the liberal policy regarding amendments and would ensure that this matter is tried on the merits.

## IV
## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant it leave to file the attached Third Amended Complaint.

Dated: October 31, 2018

**Rourke & Rosenberg LLC**

　_/s/_____

CYNTHIA ROSENBERG ( USDC Bar No. 24876)
3701 Old Court Road, Suite 6
Baltimore, Maryland 21208
Tel 410 484-4757
Fax 410 484-4915
attorneycynthia@gmail.com


**Jonathan  C. Capp, Esq**

　_/s/_____

JONATHAN C. CAPP (admitted pro hac vice)
13891 Bassmore Drive
San Diego, CA 92129
Tel 760 231-6498
Fax 858 435 2510
jcclex@gmail.com