# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND DIVISION, SOUTHERN DIVISION

| | |
|---|---|
| HICHAM ELKHARROUBI Et al.<br><br>Plaintiffs,<br><br><br><br>SIX FLAGS AMERICA LP et al.<br><br>Defendants, | Civil Action No.: 8:17-cv-02169- TDC<br><br>**COMBINED CROSS-MOTION FOR SUMMARY ADJUDICATION AND RESPONSE TO MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION AND IN OPPOSITION TO DEFENDANTS' MOTIONS; DECLARATION OF JONATHAN C. CAPP WITH APPENDIX OF EXHBITS AND EXHIBITS** |

## RESPONSE TO MOTION FOR SUMMARY JUDGEMENT AND CROSS MOTION FOR SUMMARY JUDGEMENT/SUMMARY ADJUDICATION OF DISTINCT ISUES
## I
## INTRODUCTION

Defendants' motion for summary judgement is misconceived. In fact the arguments advanced by Defendants actually support Plaintiffs' cross-motion for

summary adjudication. Defendants argue quite correctly that only an expert witness can opine as to a complex mechanical device such as the drop gate function on the Bonzai Pipelines waterslide at issue. However, as is explained *infra*, this fact enables Plaintiffs to obtain summary adjunction against Defendants and not *vice versa*.

Defendants essentially argue that in the event their pending motion in limine (Court. Doc. 63) is granted and Dr. Calderon's proposed testimony as to issue of maintenance is precluded, then they should obtain judgment as a matter of law. The argue that in the absence of expert testimony Plaintiffs can not prevail.

They are simply incorrect.

As is explained *infra*, Plaintiffs do not need expert testimony to prove any failure of maintenance to prevail in this case. The Maryland legislature through the Code of Maryland Regulations (COMAR) has established the standard of care and detailed requirements as to, <u>inter alia</u>, daily inspections on amusement attractions and waterslides. In the event that Defendants have violated these statutes there is a presumption of negligence which Defendants can only rebut using expert testimony. Plaintiffs can prove these violations using admissions from the Defendants as is demonstrated *infra* in Plaintiffs' motion for summary adjudication. Since Defendants have not designated any expert who can testify as to maintenance issues relating to a 'complex mechanical device' they cannot overcome the presumption of negligence due to their violation of COMAR.

Furthermore Plaintiffs , <u>inter alia</u>, allege that the waterslide was defective as,

a) The drop gate was a solid surface that was not padded or otherwise rendered incapable of injuring a rider, (Third amended complaint (Doc. 43.4) (TAC) ¶ 35

b) It was supplied with inadequate instructions as to its operation and maintenance (TAC ¶¶ 27, 30)

Plaintiffs do not require testimony from an expert in complex mechanical devices to prove these two claims. Splashtacular have already admitted that they could have padded the drop gate with ½ - ¼ inch of rubber like material. Testifying as a *biomechanics* expert Dr. Calderon opines that this measure could have lessened the impact. Plaintiffs

medical expert, board certified orthopedic surgeon Andrew Siekanowicz M.D. will opine that such rubber padding would have lessened the impact and even eliminated the injury altogether. Defendants do not dispute that Dr. Calderon is a biomechanics expert and can render this opinion. Defendants do not dispute that an orthopedic surgeon can do the same.

Expert testimony is not required to determine whether Splashtacular supplied instructions that comply with the relevant provisions of COMAR. A lay jury can determine this by reading the manual and comparing it with the text of the statute, as can obviously this court. A lay jury can also determine whether or not rubber can be placed on a hard surface and serve to diminish an impact on a human body.

As is explained Plaintiffs are entitled to summary adjudication on at least the key issues of this case.

Plaintiffs thus address the facts and law relating to the pending motions and then afterwards address each respective motion in turn.

## II
## THE FACTS AND CURRENT PROCEDURAL STANCE

### A. THE FACTS OF THE UNDERLYING MATTER

Plaintiff HICHAM ELKHARROUBI (Hicham)  is a citizen and resident of the country of Morocco where he lives with his co-plaintiff spouse Lamya. He is currently 41 years old. Declaration of Hicham Elkharroubi  Ct. Doc  20-1( Hicham. dec. ¶ 2) In the summer of 2015  plaintiffs traveled to the United States on vacation for around 18 days. X Flags ( Id. ¶ 3) On August 12, 2015 they visited the Hurricane Harbor amusement park operated by defendant Six Flags America LP (Six Flags) in Maryland.  At the park  he rode the  Bonzai Pipelines waterslide attraction and which had been manufactured and sold to Defendant Six Flags by the predecessor in interest of Defendant AZS Industries LLC (AZS), one Splashtacular, Inc.  (Splashtacular) The Bonzai pipelines attraction is a

ride whereupon the riders are placed on a trap door or drop-door in a launch capsule. Once the trap door/drop door is opened the rider is hurled down a slide with a six-story drop and then follows multiple rapid turns before dropping down to the splash pool.) Hicham ascended the steps to the part of the attraction where riders enter individual capsules, stand on a trap door before being released, and then fall thru a tube into a type of landing pool. This was the first and only time he rode this attraction. When he entered the capsule there was only one member of staff present in the vicinity of the capsules. Nobody instructed him at all as to how to enter and position himself in the capsule. He does not remember seeing any visual or written instructions as to how he should position himself in the capsule. ( Hicham.dec ¶¶6-7)

To the best of his recollection he positioned himself in the capsule by placing his back against the back of the capsule and with his feet together more towards the middle of the trap door. All of a sudden the trap door was activated and opened. As he fell he hit his left knee against a hard surface. ( Id. ¶¶ 7-8) In fact he was hit by the trap door ( deposition transcript of Hicham Elkharroubi **Ex. F** (Hicham.depo) pp. 171-173) The incident happened in fractions of a second when Plaintiff was in a state of shock. (Hicham Depo. p.125)

The first aid team arrived and his right knee and leg was bandaged and he was supplied with a wheel chair and crutches to enable him to walk. (See also Declaration of Jonathan Capp of May 7, 2019( Capp.dec.¶ 16) **Ex. N**) Prior to this incident he was perfectly healthy and had no problems with his knees and legs.        On August  15, 2015 he attended the Emergency Department at the New York Presbyterian Hospital in Manhattan. He was examined and x-rayed by the attending doctors and was diagnosed with a left tibial fracture, prescribed painkillers, and advised to undergo surgery.   ( Hicham.dec ¶¶ 10-11) On August 17, 2015[1] Plaintiffs flew back to Morocco and Hicham was operated on in Morocco on August 19, 2015. Metal plates were installed during the surgery. The metal plates installed in his leg and knee are still in there and he is still

---

[1] The declaration contains a typo- namely 2017. He returned to Morocco and was operated on there  in August 2015.

suffering as a result of the accident at the Hurricane Harbor waterpark. ( Id. ¶ 12)

## III

## REGARDING THE UNDISPUTED MATERIAL FACTS OF THIS CASE

Plaintiffs will establish that it is undisputed that defendant Six Flags violated COMAR and are thus liable as a matter of law.

In summary COMAR demands from Six Flags with respect to the ride that:

(1) daily  inspections are conducted in a manner which permits **close scrutiny of the slide and all of its parts**., and

(2) that each amusement attraction is inspected **each day** before operation to ensure that: (1) **No part is damaged, missing, or worn**;

In order to comply with the statute on the date of the accident, namely August 12, 2015, Six Flags need to establish that their maintenance procedures ensured the daily inspection of all of the parts of the Bonzai pipelines (the ride).

### A. PLAINTIFFS CONTEND THAT THE FOLLOWING FACTS CAN NOT BE DISPUTED

It is undisputed that the Bonzai Pipelines is an amusement attraction and a waterslide. See Six Flags response to Plaintiff's request for admissions No. 1 & 2  (Capp.dec.¶16 **Ex. I**)

It is beyond dispute that Six Flags was the owner and operator of the ride. See Six Flags response to Plaintiff's request for admissions No. 3(Capp.dec.¶16. **Ex I**)

It is beyond dispute that Splashtacular is the manufacturer of the ride and sold it to Six Flags. Shortridge.depo . p. 29 and Sales contract at Ct. Doc. # 18-3.

It is beyond dispute that Plaintiff Hicham Elkhaourribi was injured on the ride when attending as a patron at the Six Flags water park. See Six Flags Patient care report. (Capp.dec.¶16 **Ex.N**)

The board certified orthopedic surgeon, expert witness designated by Six Flags, Mark Peterson M.D. and who confirmed Hicham sustained a medial tibia fracture has no reason to disbelieve that Hicham was struck by the trap door as he claims. Dr. Peterson was specifically retained to advise on causation in this matter. Deposition of Mark Peterson pp 12 & 25-26. ( Capp. Dec. **Ex.G**)

No variance was granted for the requirements of COMAR. Six Flags response to Plaintiff's request for admissions No. 8 (Capp.dec.¶16 **Ex.I**)

It appears undisputed that there was no actual accident reort generated other than the patient care report. (Capp.dec ¶ 16)

It is beyond dispute that the drop gate function of the ride is a sophisticated piece of machinery and which contains multiple and varied parts to include nuts, bolts, cylinders, valves, sensors, hoses, a compressor, and at its heart and industrial computer (PLC). See arguments advanced by Defendants in their pending motions and report of Mathew Lenz contained in expert disclosures (Capp.dec. ¶ 15. **Ex. M),** and also at Exhibit B to Lenz.depo (**Ex. B**))generally

Matthew Lenz, testified as the FRCP 30 (b) (6) designee for Splashtacular as also as their unretained expert witness.  (Capp.Dec.¶ 4 **Ex.B** . Deposition of Matthew.Lenz (Lenz.depo) p. 6) Mr. Lenz is the engineer who designed the drop gate function of the ride. He authenticated multiple documents that document these parts such as his expert report ( Lenz.depo p. 26 at Exhibit B),  failure mode and effects analysis ( Lenz.depo. p. 90 Exhibit D), Drop gate Assembly and Capsule periodic maintenance ( Lenz.depo. p. 33 Exhibit E), Spare Parts list ( Lenz.Depo p. 156 Exhibit H), Photos ( Lenz Depo pp. Exhibit I, and Data Sheets ( Lenz.depo pp. 173, 178 Exhibit J). Mr. Lenz admitted that the drop gate function contained numerous parts to include valves and compressor key parts, integral to the system. See (Lenz Depo.  pp.65-66) All of these documents were produced by Splashtacular in response to discovery demands of Plaintiffs ( Capp.dec. ¶ 4. Found at Capp.dec. **Ex C**)

Mr. Lenz states that at the heart of the drop gate is a programable logic controller or a PLC and which is a key part of the drop gate. ( Lenz.depo.  pp. 51-52)

**B. IT CAN NOT BE DISPUTED THAT SIX-FLAGS FAILED TO CONDUCT THE REQUIRED DAILY INSPECTIONS OF ALL PARTS OF THE WATERSLIDE AND THAT THE INSTRUCTIONS PROVIDED BY SPLASHTACULAR FOR THE RIDE WERE DEFECTIVE**

It is both beyond dispute that,

(1) Six-flags failed to conduct the required daily inspections of almost any of these parts let alone all of them as required by COMAR,

(2) That the manufacturer's manual and/or instructions failed to specify daily inspections which require the inspection of parts as required by COMAR

The deposition testimony of Troy Shortridge the FRCP 30 (b) (6) designee for maintenance matters on the Bonzai pipelines is especially telling. (Shortridge.depo-Capp.Dec. ¶ 5. **Ex. C**)

Mr. Shortridge was designated by Six Flags to testify as to matters of maintenance on the ride ( Shortridge.depo. p. 7). (Capp.dec. ¶5)

Although Mr. Shortridge performed no maintenance  inspections on the ride in August 2015, namely the time of the incident, ( Id. pp. 50, 103), he was the supervisor of the maintenance department for Six Flags. (Id. p.13) One Vince Cuilla was in charge of maintenance of the ride in August 2015 and Mr. Shortridge never spoke to him. (Id. p. 34).

Despite asking the retention lady Mr. Shortridge could not find any maintenance records relating to the ride for August 2015 (Id. p. 56). All he could find was a water quality inspection sheet which does not relate to mechanical maintenance (Id. pp. 58-59) and which were performed by a 'pool tech' called Andre Spratley who is not a mechanic (Id. p. 62). Pool techs have nothing to do with mechanical maintenance issues. (Id.pp.  23-24)

Mr. Shortridge does not even know what the maintenance check list for the ride looked like in August 2015. He confirmed that maintenance works by checklists and if something is not on a checklist they would not do it. ( Id. 51-52).

Mr. Shortridge confirmed that the Splashtacular Operations and Maintenance manual ( Id. p. 42 Exhibit 3 and also at **Ex. P** for ease of reference) is the sole maintenance manual they used in August 2105 to determine what maintenance to do on the ride ( Id. 42-43) He confirmed that the only item this manual references for the drop is to 'visually check the cylinders for air leaks'[2] ( Id. 52). As far as any maintenance procedures on the actual tubes are concerned, or the lengths of the tubes Mr. Shortridge and thus Six Flags know nothing. (Id. 88)

Matthew Lenz was designated as the non retained expert and FRCP 30 (b)(6) designee for Splashtacular on issues of maintenance for the drop gate function (Lenz. depo p. 6) Mr. Lenz  states in his report that not only daily maintenance procedures but weekly procedures are required. (See his expert report ¶ 9.f (**Ex. M**). Mr. Lenz testified that the daily and weekly maintenance procedures and inspections are found in a three page document entitled 'Drop gate Assembly and Capsule Periodic Maintenance' (also at **Ex. O** for ease of reference) that should have been provided to Six Flags, but he did not do so  and he could only guess as to who at Splashtacular provided them to Six Flags ( Id. 35-36). Mr. Lenz testified  that this document contains the instructions as to how Six-Flags should maintain the ride. ( Id. 46)

Either way, Mr. Lenz confirmed that this 3 page document ( Id. Exhibit E to depo, and also at Capp.dec. **Ex. O**) contain the daily and weekly inspections that he said should have been performed on the ride.(Id. 56-57) Mr. Lenz, testifying for Splashtacular, also conceded that the Splashtacular Operations and Maintenance manual (Capp.dec. **Ex.P**), used by Six Flags as stated by Mr. Shortridge,  was thus inadequate. He also identified errors in this manual such as the instruction that leaks in the cylinders could be detected visibly instead of audibly by listening for leaks. (Id. pp 130 & 132) (Obviously you can not visually detect air leaks.)  Mr. Lenz also dismissed a maintenance  instruction in the manual relating to bleeding the air actuator as 'nonsense'. (Id. 133-134) It is clear from this document that at best the manufacturer specifies that virtually none of the parts of the

---

[2] As Mr. Lenz explained this is impossible to do.

drop gate be inspected on a daily basis.  Furthermore, Mr. Lenz opined that certain parts such as the pressure sensors ( Id. 75-76) and the PLC at the heart of the system require no maintenance at all ( Id. 115-116). Mr. Lenz deems the PLC 100% reliable and does not need any objective data to back up his claims. (id. 116).

IV

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**
**STATEMENT OF REQUEST FOR RELIEF**

In the TAC ( Ct. Doc. 53-4) Plaintiff Hicham Elkharroubi alleges counts of negligence against Six Flags, Splashtacular, and AZS   (counts I and IV of the TAC) and also counts of product liability against Splashtacular and AZS. (counts II and III of the TAC).

Plaintiff Lamya Gala alleges a count for loss of consortium against all defendants ( Count V of the TAC)

Plaintiffs specifically allege that there was a failure to maintain and inspect the ride and that there were violations of COMAR committed by  defendants. (TAC ¶¶ 42 and 46 (n).)

Plaintiffs allege that Splashtacular and AZS supplied a defective product in that it was accompanied by inadequate instructions as to its use and to include as to its maintenance. TAC ¶ 34.

The violations of COMAR, which have been demonstrated, entitle Plaintiff Hicham Elkharroubi to judgement as to lability with respect to the Count I of the TAC namely for negligence against defendant Six-Flags.  In the alternative Plaintiffs request that issues relating to the component parts of the negligence violations be adjudicated in their favor. Plaintiffs , and each of them, also request that it be adjudicated that the ride was defective as a matter of law as  the maintenance and operations instructions that were supplied therewith were inadequate.

Thus, Plaintiffs request:

Partial summary judgement  in this matter as to liability against Defendant Six Flags on Count I of the TAC for negligence or in the alternative for an order, or orders, treating specified facts be established as follows;

1. That Defendant Six-Flags America, L.P, have violated COMAR 09.12.62.18 part B on  August 12, 2015 with respect to the Bonzai Pipelines waterslide they operated and located at  the Hurricane Harbor Water Park  in or around Bowie Maryland.

2. That Defendant Six-Flags America, L.P, have violated COMAR 09.12.63.05 part A on August 12, 2015 with respect to the Bonzai Pipelines waterslide they operated and located at at  the Hurricane Harbor Water Park  in or around Bowie Maryland.

3. That Defendant Six-Flags America, L.P, have violated COMAR 09.12.62.17 part L (9) (a) on August 12, 2015 with respect to the Bonzai Pipelines waterslide they operated and located at  the Hurricane Harbor Water Park  in or around Bowie Maryland.

4. That Plaintiff Hicham Elkharroubi sustained an injury on August 12, 2015 of a type which COMAR 09.12.62. was intended to protect against when riding the Bonzai Pipelines waterslide.

5. That Plaintiff Hicham Elkharroubi sustained an injury on August 12, 2015 of a type which COMAR 09.12.63 was intended to protect against when riding the Bonzai Pipelines waterslide.

6. That Six-Flags America did not act reasonably in violating COMAR 09.12.62.18 part B on August 12, 2015  with respect to the Bonzai Pipelines waterslide they operated and located at  the Hurricane Harbor Water Park  in or around Bowie Maryland.

7. That Six-Flags America did not act reasonably in violating COMAR 09.12.63.05 part A on August 12, 2015 with respect to the Bonzai Pipelines waterslide they operated and located at at  the Hurricane Harbor Water Park  in or around Bowie Maryland.

8. That Six-Flags America did not act reasonably in violating COMAR 09.12.62.17 part L (9) (a) on August 12, 2015 with respect to the Bonzai Pipelines waterslide

they operated and located at at  the Hurricane Harbor Water Park  in or around Bowie Maryland.

9. That the maintenance and operations instructions provided by Splastacular Inc. when they supplied the Bonzai pipelines ride to Six-Flags were defective.


## A.  LEGAL ARGUMENT AND AUTHORITIES

### (a) REGARDING A MOTION FOR PARTIAL SUMMARY JUDGEMENT

A motion for summary judgment provides a procedure for terminating without trial actions in which "there is no genuine dispute as to any material fact and the movant is *entitled to judgment as a matter of law*." [FRCP 56(a) (emphasis added)]


**Adjudicating issues *within claim or defense (partial summary judgment):*** Rule 56(a) explicitly provides for summary judgment on "*part* of each claim or defense." [FRCP 56(a) (emphasis added)]

Moreover, "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating *any* material fact—including an item of damages or other relief— that is not genuinely in dispute and *treating the fact as established* in the case." [FRCP 56(g) (emphasis added)]. See *Beal Bank, SSB v. Pittorino* (1st Cir. 1999) 177 F3d 65, 68


### (b) REGARDING THE DAILY INSPECTION REGIME REQUIRED BY COMAR

The Maryland legislature has created a specific statutory scheme and imposed a specific duty of care upon the owners and operators and manufacturers of amusement attractions and has provided specific and heightened regulations with respect to waterslides. This extensive statutory scheme heavily regulates the operation, maintenance, and inspection of waterslides such as the Bonzai pipelines attraction at issue in this case.

The operative statutes are:

(i).     COMAR 09.12.62 ( Code of Maryland Regulations) Title 09, Subtitle 12, Chapter 62. Amusement Attractions Erected Permanently or Temporarily at Carnivals, Fairs, and Amusement Parks.

and,

(ii) COMAR 09.12.63 ( Code of Maryland Regulations) Title 09, Subtitle 12, Chapter 63. Waterslides Erected Permanently or Temporarily in the State

These statutes specifically establish the standard of care for, inter alia, the operation and maintenance of amusement attractions and waterslides

COMAR 09.12.62.01   § 1 provides,

 " This chapter establishes safety standards for the installation, assembly, repair, maintenance, use, operation, disassembly, and inspection of amusement attractions permanently or temporarily erected at amusement parks, carnivals, or fairs, operated in the State."

COMAR 09.12.63.01 § 1 A provides,

"This chapter establishes specific requirements for water slides in addition to the general requirements contained in COMAR 09.12.62, in order to ensure that water slides erected permanently or temporarily in the State are safely constructed, operated, and maintained.

These statutes read in pertinent part:

COMAR 09.12.62.18
.18. Maintenance.
A. Each owner shall read and become familiar with the contents of the manufacturer's instructions and specifications for each amusement attraction owned and operated.
B. The owner shall ensure that each amusement attraction is inspected **each day** before operation to ensure that:
(1) **No part is damaged, missing, or worn**; and
(2) The amusement attraction is compliant with the **manufacturer's specifications**.
C. The owner shall keep and maintain a manual detailing the maintenance requirements as specified by the manufacturer or professional engineer for each amusement attraction owned.
[**emphasis added**]

COMAR 09.12.63.05

.05. Daily Inspections.

A. Inspections and Records.

(1) In accordance with COMAR 09.12.62.09, the water slide owner shall ensure that the water slide is inspected

**on each day** of use to determine that:

(a) The water slide is in safe operating condition; and

(b) Conforms to the requirements in this chapter and COMAR 09.12.62.

(2) The owner shall ensure that the inspections are conducted in a manner which permits **close scrutiny of the**

**slide and all of its parts**.

    (2) Appropriate records shall be kept.

    [**emphasis added**]


COMAR 09.12.62.17 reads in pertinent part

Part L (9)  Programmable Logic Controller (PLC).

    (a) PLCs shall be designed, installed, and maintained by the amusement attraction

        manufacturer or a professional engineer


Additionally,

COMAR 09.12.62.07 H (2) (b) & (d) requires daily inspections and testing of, inter alia,

the following,

  (b)  Inspection and testing of all automatic and manual safety devices;

  (d)  Inspection and testing of control devices, speed-limiting devices, and other

equipment provided for safety;


COMAR 09.12.62.07 in pertinent part requires that there be an operating manual that

addresses, inter alia, 'Maintenance requirements and procedures;'  See COMAR

09.12.62.07 B (2) (i)


**(c) REGARDING THE VIOLATION OF STATUTE  AND THE RESULTING**

**PRESUMPTION OF NEGLIGENCE**

In Maryland a violation of a statute or ordinance results in a presumption of evidence.

In order to make a *prima facie* case of negligence based on violation of statute, plaintiff must show (a) the violation of a statute or ordinance designed to protect a specific class of persons (which includes the plaintiff), and (b) that violation of the statute or ordinance proximately caused the plaintiff's injury. *Brooks v. Lewin Realty III, Inc*., 378 Md. 70, 835 A.2d 616 (2003); *Maurer v. Pa. Nat'l Mut. Cas. Ins. Co*., 404 Md. 60, 945 A.2d 629 (2007); *Davis v. Stapf*, 224 Md. App. 393, 120 A.3d 890 (2015); *Rivers v. Hagner Mgmt. Corp.*, 182 Md. App. 632, 959 A.2d 110 (2008), cert. denied, 407 Md. 276, 964 A.2d 676 (2009); *Moore v. Myers*, 161 Md. App. 349, 868 A.2d 954 (2005).

(c) To prove proximate cause the plaintiff merely needs to show that the injury is of the type the statute was intended to protect against. *Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 90 A.3d 464 (2014); *Wietzke v. Chesapeake Conference Ass'n*, 421 Md. 355, 26 A.3d 931 (2011); *Brooks, ,* 78, 835 A.2d 616 (2003).

Once a *prima facie* case of negligence is established  then, the fact-finder must determine whether the defendant acted reasonably under all the circumstances. *Housing Authority of Baltimore City v. Woodland*, 438 Md.415,  441, 92 A.3d 379 (2014) .


**(d ) REGARDING THE LAW ON PRODUCT DEFECTS**

A product may be defective in three different ways. It may be defective (a) in manufacture, (b) in design, or (c) by failing to have adequate warnings or instructions — the absence of which is deemed to leave the product defective. *Phipps v General Motors*, 278 Md. at 344, 363 A.2d at 958; *Ziegler v. Kawasaki Heavy Indus., Ltd*., 74 Md. App. 613, 539 A.2d 701, cert. denied, 313 Md. 32, 542 A.2d 858 (1988); *Shreve v. Sears, Roebuck & Co*., 166 F. Supp. 2d 378, 406-07 (D. Md. 2001).

As stated in *Shreve*, 415, It is true that "in defective design cases involving uncomplicated products or simple design features, the question of the practicability of a proposed design change could be weighed on the basis of inference and common knowledge of the jury" when the proposed changes involved "relatively simple ideas." *Johnson v. Int'l Harvester Co.,* 702 F.2d 492, 496 (4th Cir.1983). "a jury can find of their own lay knowledge that there exists a design defect which exposes users of a product to unreasonable risks of injury, expert testimony that a product is negligently designed is not required." [*Osorio v. One World Technologies, Inc.* (1st Cir. 2011) 659 F3d 81, 87 (internal quotes omitted)]

## (e ) REGARDING EXPERT WITNESS DISCLOSURES

When disclosing  unretained experts, parties have an obligation to (a) *identify* them as testifying experts under Rule 26(a)(2)(A)  and (b) *disclose the subject matter* of their expected testimony together with a *summary of the facts and opinions* to which they will testify

If a non retained expert forms an opinion outside the context of his or her percipient observations, a full report will be required under FRCP 26(a)(2)(B). [*Goodman v. Staples The Office Superstore, LLC*, (9th Cir. 2011) 644 F3d 817, 826; physician offering opinions beyond those arising from treatment is expert from whom report is required; *Meyers v. National R.R. Passenger Corp. (Amtrak)* (7th Cir. 2010) 619 F3d 729, 734-735 (same)]

## B.  ARGUMENT

### (a) IT CANNOT BE REASONABLY DISPUTED THAT SIX-FLAGS HAVE VIOLATED COMAR AS IT RELATES TO THE MAINTENANCE AND INSPECTION OF THE RIDE

Six-Flags, through their FRCP 30 (b)(6) designees have admitted to a maintenance and inspection regime that is woefully inadequate. In August 2015 at least, Six Flags manifestly failed to conduct the daily inspections of all parts of the waterslide, let alone subject them to close scrutiny.

The maintenance manual Six Flags used ( Capp.dec. **Ex. P**) and which they claim forms the basis of any maintenance done simply does not provide for these required daily inspections. Even Splashtacular admit this manual contains errors and nonsense. Mr. Shortridge could only identify 'visually checking the cylinders for air leaks' as maintenance to be done on the drop gate and contained in the manual. (Capp.dec. **Ex. P**) But as every layman knows you cannot visually check for air leaks.

Six Flags did not even know what check list was used, if any, in August 2015. The only daily maintenance records appear to be for water quality checks performed by a pool tech called Andre Spratley who has nothing to do with mechanical maintenance.

Even if Six-Flags did comply with the manufacturer's specifications- which are inadequate in themselves- they still would not have come close to complying with COMAR.

Splashtacular admit that weekly maintenance as provided by their 'Drop gate Assembly and Capsule Periodic Maintenance' (Capp.dec. **Ex. O**) should have been followed. But this document also does not comply with COMAR. It provides for weekly inspections of multiple parts such as bolts, some sensors, connectors, bearings, mounts, shock absorbers. But COMAR requires daily inspections.

Furthermore, other parts such as the compressor, valves, pressure sensors and most importantly the PLC are omitted from the maintenance regime altogether.

In conclusion, even if they followed the manufacturer's instructions to the letter, and assuming they even received them, it is beyond dispute that Six-Flags did not conduct the daily inspections required by the above cited sections of COMAR.

Additionally, independent of the fact that the PLC is a key part of the waterslide and thus requires to be inspected daily, Six-Flags and Splashtacular have simply ignored the

requirement in COMAR that the PLC be maintained by either the manufacturer or a professional engineer.

In short, all the trier of fact need do is compare the maintenance manual used by Six Flags ( **Ex. P**) and compare it with **Ex. O** and the voluminous parts detailed and lists attached in the Lenz. Depo to conclude that on any analysis Six Flags must have violated the daily inspection requirements of COMAR.

This analysis does not require expert testimony. It is common sense.

### (b) PROXIMATE CAUSE HAS BEEN ESTABLISHED IN THIS CASE

To establish proximate cause Plaintiffs need only show that the injury must be of the type the statute was intended to protect against. *Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 90 A.3d 464 (2014) ; *Wietzke v. Chesapeake Conference Ass'n*, 421 Md. 355, 26 A.3d 931 (2011)

In this case it is undisputed that Plaintiff Hicham was injured whilst riding the Bonzai pipelines. Although there was no accident report Six-Flags at least documented the injury in their first aid report. Six-Flags do not dispute he was injured on the ride and been rendered some kind of first aid assistance. Six-Flags expert witness, Mark Peterson M.D. diagnosed a media tibia fracture and had no reason to disbelieve that Plaintiff was injured as he claims.. The applicable statutes, namely COMAR 09.12.62 and COMAR 09.12.63 clearly aim to protect riders of amusement attractions and waterslides from injury. Plaintiff is clearly within this class of persons who are protected by the statute. The injury he sustained is clearly of the kind that the legislature intended to prevent in this case.

### (c ) THE OPERATIONS MANUAL AND INSTRUCTIONS PROVIDED BY SPLASHTACULAR IS DEFECTIVE AS A MATTER OF LAW

Splashtacular, thru their designee Mr. Lenz, have admitted that the 50 page operations manual is defective. Not only does it contain errors and nonsense, it completely fails to detail the maintenance that is required to be done on the drop gate. Mr. Lenz admitted that the additional daily and weekly procedures details in the 3 page 'Drop gate Assembly and Capsule Periodic Maintenance' should have been followed. But even if

this was provided to Six Flags this document is not part of the manual and in any event is inadequate. The fact is that none of these documents provide a maintenance regime that complies with the daily maintenance procedures required by COMAR. The fact is Splashtacular have provided instructions that violate COMAR and the duty of care established by COMAR. As such, these instructions render the product defective as a matter of law.

### (d ) DEFENDANTS CAN NOT REBUT THE PRESUMPTION OF NEGLIGENCE IN THIS CASE SINCE THEY HAVE NOT MADE THE REQUIRED EXPERT DESIGNATIONS AND DISCLOSURES

Plaintiffs largely repeat the arguments they make in support of their motions in limine filed concurrently with this motion (Doc. 63).

In order to overcome the presumption of negligence resulting from their violations of COMAR defendants need to show that they acted reasonably in ignoring the law. However they are unable to do so in this case.

In item 7 of their notice of motion for summary judgement they state:

> '*That this is a products liability case involving complex matters of pneumatics, mechanics and operation of an amusement park attraction. As such, Plaintiff is required to prove his case with expert testimony*'. (Doc. 64 page 2)

They repeat this assertion throughout their moving papers and assert that the theory of *res ipsa loquitur* is inapplicable on this basis. Their motion for summary judgment is largely based on the fact that Plaintiffs can not prove their case in the even that they are unable to offer the expert testimony of Dr. Calderon.

In fact it is Defendants who require expert testimony in this case and not Plaintiffs. Defendants require expert testimony to establish that they have acted reasonably and to defeat the presumption of negligence resulting from their statutory violations. But Defendants have neglected to designate an expert who can testify for them in this regard. Any analysis of what  inspections or maintenance  Six Flags should have done  on

complex machinery, such as the waterslide, is beyond 'the ken of a layman'.

Mr. Lenz can not testify to the reasonableness of whatever Six Flags did since he has specifically stated that he is not offering any such opinion. Mr. Lenz clearly stated that he has no idea what they did or did not do and had not been in contact with Six Flags since the installation. (Lenz.depo pp143-144) He has not seen the ride since the 2013 installation ( Id.54-55). In any event his expert report ( **Ex. M**) does not disclose that he will offer this opinion.

Michael Oostman, the retained aquatics expert designated by Splashtacular, likewise declined to opine on any violated by Six Fags of COMAR as was not retained to look into what 'Six Flags did or did not do'. Depositon of Michael Oostman ( **Ex. H**)(Oostman depo. Page 83). Furthermore he has no knowledge of nor offers opinions as to machinery, mechanics, pneumatics and information technology. (Id. pp. 10-11)

Six Flags have designated three unretained experts namely their FRCP 30 (b) (6) designees Bradley McClain, Troy Shortridge, and Spencer Lucas. None of these have authored a report.

Per FRCP 26 (a) (2) (C). they must *disclose the subject matter* of their expected testimony together with a *summary of the facts and opinions* to which they will testify. However Six Flags has not listed the reasonableness of their maintenance procedures as a fact or opinion as to what they will testify to. At most Six Flags have disclosed that 'they do collectively hold the opinion that all maintenance and operational protocols and warnings were in place, that they were followed by park personnel'. But opining as to whether they actually followed their own protocols does not cover an opinion as to whether these were reasonable. Their protocols were in any event defective. They have not disclosed that they will opine as to whether or not the daily Inspections and maintenance actually performed were reasonable with respect to COMAR violations. Furthermore, Bradley McClain was the HR manager when deposed in October 2018 and was at the time of the accident in August 2015. (deposition of Bradley McClain(**Ex.E**) p. 11 )When deposed Spencer Lucas admitted, together with his counsel, that he knew nothing about maintenance. Deposition of Spencer Lucas (**Ex. D**) (Lucas.Depo pp. 54-

55)

Even though he was Six Flags FRCP 30 (b) (6) designee Troy Shortridge had no percipient knowledge of the inspections that took place at the time of the accident. He did not inspect the ride in August 2015 and did not know what the checklist even looked like ( Shortridge. Depo. p.50). Moreover he certainly was not performing maintenance on the ride in August 2015 and has never been the regular maintenance guy since it is not his area.(Id. 103-104)

Wirth no percipient knowledge of the maintenance procedures Mr. Shortridge can only testify as an expert if he has authored a report, and he has not done so. *Goodman v. Staples The Office Superstore, LLC*, (9th Cir. 2011) 644 F3d 817, 826;

In any event, Mr. Shortridge, although a maintenance mechanic is simply not qualified to opine on matters related to complex machinery and pneumatics. He does not have any academic qualifications. He has never undertaken any courses  nor obtained any certificates in engineering or mechanics. At most he has been certified internally by Six Flags as a maintenance mechanic. ( Shortridge.depo. pp. 17-18)


**(e ) CONCLUSION**

In the circumstances Plaintiffs have conclusively established negligence on the part of Six Flags and are entitled to the relief requested. Alternatively the court should adjudge as proven the issues listed by Plaintiffs in their request for relief listed above. Additionally Splashtacular and AZS have no *bona fide* defense to the claim that they provided a defective product in that the instructions provided with the waterslide were defective as a matter of law.


**V**

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**

**(A)    DEFENDANTS' CONTENTION THAT PLAINTIFFS NEED EXPERT TESTIMONY TO PREVAIL IS SIMPLY WRONG- IN ANY EVENT**

## PLAINTIFFS ARE ENTITLED TO SUMMARY ADJUDICATION AND NOT DEFENDANTS

Defendants essentially ask the court to grant their motion in limine (Doc. 63) to preclude Dr. Calderon's testimony and as a consequence grant this motion on the basis that Plaintiffs need expert testimony to win this case.

In their opposition to the motion in limine Plaintiffs have set out their reasons why they believe Dr. Calderon's testimony should not be excluded and they reincorporate them by reference here without citing them in full for reasons of judicial economy.

For the reasons set out *supra* the analysis of Defendants is simply incorrect. Plaintiffs do not need Dr. Calderon's expert testimony on mechanics and pneumatics to prevail. Defendants argue that since Dr. Calderon has testified that there is no defect in the mechanical mechanism then the product defect allegations must fail. Firstly, Dr, Calderon testified that there was no defect in the drop gate mechanism *if it worked properly*. Nowhere in the TAC do Plaintiffs allege that the drop gate *per se* is defective. If maintained properly it works. As a *biomechanical*[3] expert he then opined that the same should be padded and that with correct padding the force of the impact would have been less and reduced the injury. (Calderon.depo. pp.187-88) Plaintiffs medical expert, board certified orthopedic surgeon Andrew Siekanowicz M.D. will opine that such rubber padding would have lessened the impact and even eliminated the injury altogether. (See Capp.dec. ¶ 19 and **Ex. Q** thereto) Splashtacular had admitted that the gate could be padded by ¼- ½ inch of rubber like material. (deposition of Dr. Siekanowicz with report attached at page 21) Mr. Lenz may believe that this does not gain much but he is not a biomechanics expert. Of note is that Mr. Lenz admits that he has little or no knowledge of biomechanics and of the effect of trauma through high energy impacts.

---

[3] Although not directly relevant to their motion Defendants also assert, incorrectly, that Dr. Calderon has testified that Plaintiff's injury was not due to any improper positioning and cite his deposition at page 187. Dr. Calderon merely stated that the fact that Plaintiff's legs were not crossed made no difference since he would have been impacted either way, i.e. with legs crossed or not.

'From my limited knowledge of trauma from high energy impacts, (and I admit to virtually none),'.. See Lenz report.¶ 9 .h at page 10.

Furthermore whether it is feasible to put a ¼ to ½ inches of rubber on a metal drop gate and whether such would lessen the impact in this case does not require expert testimony. As stated in Shreve, 415, It is true that "in defective design cases involving uncomplicated products or simple design features, the question of the practicability of a proposed design change could be weighed on the basis of inference and common knowledge of the jury" when the proposed changes involved "relatively simple ideas." *Johnson v. Int'l Harvester Co.,* 702 F.2d 492, 496 (4th Cir.1983). "a jury can find of their own lay knowledge that there exists a design defect which exposes users of a product to unreasonable risks of injury, expert testimony that a product is negligently designed is not required." [*Osorio v. One World Technologies, Inc.* (1st Cir. 2011) 659 F3d 81, 87 (internal quotes omitted)]

Whether or not rubber, as oppose to metal will lessen an impact is a matter suitable left left to a lay jury, although expert testimony may be of assistance. Lay jurors are capable of determining issues of adequate signage.

Plaintiffs , inter alia, allege that the waterslide was defective as,

    a)  The drop gate was a solid surface that was not padded or otherwise rendered incapable of injuring a rider, (Third amended complaint (Doc. 43.4) (TAC) ¶ 35

    b)  It was supplied with inadequate instructions as to its operation and maintenance (TAC ¶¶ 27, 30),

    c)  The signage provided was inadequate ( TAC ¶ 35),

Plaintiffs do not allege that the drop gate mechanism, *if it works properly*, and is properly maintained, is defective. In the foreseeable event it does not work then it should be padded. Also proper instructions should be provided to ensure that it is correctly maintained. This includes a proper checklist, maintenance program and life time  for the parts ( Calderon.depo 214) As stated above without proper instructions a product is defective . <u>Phipps</u>.

## C. DEFENDANT AZS's MOTION BASED ON THE PRIVATE FORECLOSURE AGREEMENT SHOULD BE SUMMARILY DISMISSED

AZS base their motion for summary judgement on a supposed private foreclosure agreement that they have simply appended to their motion ( Doc. 64-2). However this document is inadmissible since it has not been properly authenticated.

In the Fourth Circuit, materials considered in summary judgment must be authentic. *Yoon v. Sebelius*, Civ. A. No. CBD-08-3173, 2010 WL 4293513, at *2 (D. Md. Nov. 1, 2010).*Bookhultz v. Sears Authorized Hometown Stores LLC*, USDC, D. Maryland.April 13,2018 WL 1795338 any documents submitted that "appear necessary to [the moving party's] argument and the satisfaction of its initial burden" must be "authenticated by either an affidavit or deposition." *See Yoon* 1 2010 WL 4293513.

Furthermore, even if it were admissible, the agreement specifically provides that Kansas law should apply. See page 3 at 5, last line.

Defendants have not cited Kansas Law in support of their motion as is required by this choice of law clause.

For these reasons the motion of AZS based on the bald and unsubstantiated assertion that they did not purchase the liabilities of Splashtacular be denied.

## D. CONCLUSION

All of Plaintiffs' claims can be proven without the need for the expert testimony of Dr. Calderon as to mechanics and pneumatics. In any event for the reasoning set out in Plaintiffs' motion for summary judgement *above* Plaintiffs' case can be proven as a matter of law.

In conclusion Defendants' motion is misconceived and should be denied.

Dated: May 7, 2019

**Rourke & Rosenberg LLC**

_/s/_ _____

CYNTHIA ROSENBERG ( USDC Bar No. 24876)

3701 Old Court Road, Suite 6

Baltimore, Maryland 21208

Tel 410 484-4757

Fax 410 484-4915

attorneycynthia@gmail.com


**Jonathan  C. Capp, Esq**

_/s/_ _____

JONATHAN C. CAPP (admitted pro hac vice)

13891 Bassmore Drive

San Diego, CA 92129

Tel 760 231-6498

Fax 858 435 2510

jcclex@gmail.com